May it please the Court, Stephen Brazelton for Petitioners Milvian Gonzalez-Solares and Jasmine Solares-Gonzalez. I would like to reserve two minutes for rebuttal, Your Honor. Just keep your eye on the clock. We'll try to help you. Thank you. As you know, Your Honor, this case involves a mother and a daughter who seek the protection of our asylum laws.  And the Court referred to Solares in the issues. I believe that refers to the daughter. Great. Okay, thank you. And so I'll refer to the mother as Gonzalez and for clarity on the daughter as Solares. Okay. And the first issue is whether the BIA decided that the social groups were not cognizable. And the BIA decided that the groups that pertain to the mother, specifically persons who were targeted for extortion, were not cognizable. But the BIA appears to have assumed that the group that the daughter belonged to, young females in Guatemala, was cognizable. Can you help me with what happened here? Let me tell you how I read what the IJ did and tell me if I'm wrong. The IJ said something like, I've heard your testimony, but I really don't think that the persecution that you fear arises from your membership in the group of young women, but rather from your membership in a group of rich children. Is that your understanding of what the IJ said? Essentially, however, the IJ did not analyze whether it was a mixed motive case. The IJ did identify the one central reason standard. Right. And that's wrong with respect to withholding. I don't think there's any contest about that. But my question is, given what the IJ did, how do you read what the BIA did with respect to the daughter's social group? The BIA appeared to accept that the daughter did belong to a distinct social group that was cognizable and did analyze whether the persecution was on account of that particular social group. Would her claimed social group have been cognizable, young women in the country? Young women in Guatemala? Yes. Yes, under the Perdomo holding, I believe it is. And the BIA appears to assume that it was. Would the alternative social group, young rich children, have been cognizable? Young rich children? Yes. Sort of that's what the IJ said. It said, look, you really don't face persecution because you're a young woman. You may face persecution because your family has money. So if she were in a group of people who faced persecution because their family had money, would that be a cognizable social group? I believe this Court has said that wealth is not a distinct social group. And like you, I'm not sure that the BIA picked between the two, but I was interested in what the IJ had said. Can I branch off of what my colleague had just mentioned here? As I read what the daughter said in her I-589 application, she said that she was, and it quotes, a young single woman. The BIA defined the group as young single women who are targeted for harm in Guatemala. But either way, you've got the characteristic of being single. Under our Reyes versus Lynch cases, you know the characteristics of a social group must be immutable. Is being single an immutable characteristic? Of course one can always marry. Right. However, it may be immutable if one never chooses to marry. But that's one's choice. Of course, a social group can also be by voluntary. So it is not immutable or it is immutable? Well, it's like a voluntary association. One can belong to a group, and that can be recognized as a social group as well. So the BIA at an earlier point had a case involving taxi drivers who were subject to extortion, and they said that they were, as a social group, members of a group who drove taxis, and they disqualified the group on the basis that they could change jobs, they could change their professions. They said it wasn't immutable. What's the difference? I mean, obviously, gender versus taxi cab drivers, but isn't that a similar situation? I would distinguish it on the grounds that one's marital status is really fundamental to one's identity and personhood versus one's occupation is not quite so fundamental. I agree, but at least as I read it, what this young woman was saying is, I'm vulnerable. I'm being targeted by these gangs because I'm single, I'm a young woman, and I'm vulnerable. If she was married, in theory, she would be less so. So it's not quite the same as what you were talking about earlier, is it? Well, you could have the social group could be larger to include young females. That's not what she said, if I understand it. Do you have anything that says a difference? Is it the social group, is it the person that has to be immutable, or is it the social group that has to be immutable? The social group would remain the same, young, single women. People join religions and move out of religions all the time. The religion stays the same, but the person changes. Could someone claim to be a member of a religion, for instance? Sure. Of course, the social group would not change. The confines of the social group wouldn't change. And the person could leave a group and still be identified with that particular group as well. I'm not sure I can tell from this record, or at least it didn't flag it. How old was the daughter? At the time, she was late teenage years. I don't remember exactly. Can I ask you a different question? It's about the cat claim. Did the IJ make a finding that both of the petitioners were not likely to be tortured? It wasn't a reasonable likelihood that they would be tortured if returned to Guatemala? I believe he just— The BIA says that finding was supported by the evidence and then says there was also a finding that there wasn't going to be government acquiescence or involvement, and that's supported. I have questions about the second finding, but I'm trying to figure out whether the IJ made the first one. I don't think he did. I think he jumped to the second one and lumped them both together to say that she's not going to be tortured in the future  with the acquiescence. But when it got to the BIA, they separated the two. And so what's your view about what the BIA did? I think that's wrong. I think in a situation like that, they should remand to the IJ to make the finding in the first instance. Because they can't make that factual finding. It has to be made by the— Correct. Okay. And one point with respect to the mother and the daughter together, as I've argued, the daughter belongs to this cognizable social group, and the harm is a mixed motive extortion plus directed at the daughter. But the mother qualifies for asylum or withholding as well, because as the Court has held in other cases, including Benjamin v. Holder, 579F3D970, Ninth Circuit, 2005, harm directed at a parent's child, if it's severe enough, is harm directed at the parent as well. How does matter of AB affect this? I don't believe it does, Your Honor, because the matter of AB doesn't compromise this Court's holding in Brahas. It doesn't change the legal definition of a social group. It merely reiterates what the Board has said in the past, I would argue. Well, let me—I know you want to take some time for rebuttal, but I do want to ask this. Assume that the BIA was right and that the mother's social groups are not cognizable. Is she then entitled to withholding, in your view? I would say that she is under the Court's holding in Benjamin v. Holder that I cited because of her relationship to the other petitioner, her daughter. If the harm is severe enough to the daughter, the parent also qualifies. In the Benjamin case, the Ninth Circuit remanded, in the case of threatened harm of female genital mutilation to the daughter, but the petitioners were parents and child, and the Board remanded for all the petitioners. You want to save the balance of your time? Thank you, yes. Okay. Let's hear from the government. Hello. May it please the Court, my name is Jesse Lorenz, and I represent the Attorney General of the United States. I would just like to take a quick second to address Judge Hurwitz's concern about the IJ's CAT determination. Here, the petitioners fear gangs. CAT is designed to protect against the government. So they necessarily had to show consent or acquiescence of the government. Since they didn't fear the government, it wasn't improper for the IJ not to address, I guess, what you're considering the first portion of it, because she's not fearing the government, so it's torture. Well, no, there's actually two separate parts of it, and here's my concern. If you – if there's not a reasonable likelihood that you will be tortured by anyone, then you're not entitled to CAT relief. If there is a reasonable likelihood that you're going to be tortured, then the question is whether the torturer will either be the government or somebody acting with the acquiescence of the government. And the IJ, as your colleague said, said you haven't shown that you would be – there's a reasonable likelihood that you will be tortured with the acquiescence of the government. The BIA said he made two findings. One is there's not a reasonable likelihood you'll be tortured, which would end the analysis, or second, even if you would, that it wouldn't be with the acquiescence of the government. On that second part, I'm not sure – I have some concerns about whether or not the IJ's finding is correct, and so I'm trying to figure out whether there's one finding here or two. And I see what you're saying. I misunderstood your question. I thought you were getting to whether it was a government actor in the first instance. But as to the other gangs, the question is whether the gangs are – whether, in effect, the government is acquiescing in the violence that the gangs perpetrate. On that one, I think their case is stronger, and so I'm trying to figure out whether or not the IJ said it really doesn't matter because you're not likely to be tortured. Well, and to your concern, government acquiescence, because she fears gangs, is depositive of her CAT claim. I mean, if she can't show consent or acquiescence, she can't succeed on her CAT claim. Right. Regardless of the harm that she may fear from the gangs. I would suggest, though, also the Board's decision, it considered that and concluded that she wasn't likely to fear harm because it's – she fears indiscriminate – But that's a factual finding. And the Board can't make factual findings that the IJ didn't make. So I still – I'm going back to trying to figure out what factual finding the IJ made. Well, I think the IJ was focusing on the government acquiescence part, and as I mentioned, that is independently dispositive. So the Board's agreement with that is dispositive of her CAT claim. So if you believe the IJ was focusing on the acquiescence part, do you also believe that he didn't make a finding with respect to the likelihood part? I don't think he directly addressed that. I think that was – he kind of looked at the – I mean, he found no past persecution, which I think is supported in the record. Right. That's a fact that he could have – Or past torture, I should say. That's a fact that he could have relied on to make the finding as to the first half of the test. But like you, I'm not sure that he did make a finding. And I see what you're saying. But as I mentioned, the acquiescence and consent, that is independently dispositive of her CAT claim. So – Can I move to a slightly different issue here? We'll call them mother and daughter since it otherwise is confusing. Did the BIA decision address whether the daughter's proposed social group was cognizable? I don't believe it did. I think they assumed for the sake of argument that it was. Their decision rests pretty strongly on the nexus determination that they feared nothing more than indiscriminate crime. And I think that is supported. And I think that is consistent with this Court's decision in Zatino. They didn't show – But is that enough? One of the things about this case that seems fairly clear, and there's not much that is, is that the mother and the daughter are quite distinct in their claims for the most part, and that the BIA seemed to have just brushed over some of the findings that needed to be done with respect to the daughter. So my question to the government is, in the event that the BIA failed to determine whether the daughter's social group was cognizable or, for that matter, whether Barajas applied in this situation, what should we do? Can we decide that ourselves, or do we need to remand with respect to the daughter on the withholding claim to the BIA? Well, initially, Your Honors, I would suggest that the nexus determination is dispositive. Many think the record supports that their factual scenario is just a fear of indiscriminate criminal violence. But that's not what the BIA said. The BIA said they haven't shown that it was one central reason. The BIA didn't say there's no evidence at all. You may be right in evaluating the evidence, but it's not what the BIA said. Well, I think, Your Honor, I think they – I understand that they cited to the one central reason test, but I really think at bottom their determination is it's no reason other than crime. Did the IJ find that? I think that is actually what I think the core of the IJ's decision is the same thing, that regardless of what their proposed social groups are, they basically fear only crime. And, I mean, if you look at the transcripts of their hearing, they're basically just saying these guys wanted money from us. The persecutors or the alleged persecutors motive in this case is only financial. I'm trying to focus on what the fact finder found. You may be right. If I were the fact finder, that might be what I found. What did the IJ actually find? I think that's what the IJ found. I mean, that is definitely the heart of the IJ's decision on their asylum and withholding claims, that they didn't fear anything other than criminal violence. It's just these extortionists were motivated by money. There's no showing that they were motivated by anything else than financial gain. To answer the question, your earlier question, I'm sorry, about the particular social group, I don't think this Court has to reach that issue. The Board didn't reach the issue of Solaris's, the daughter's, social group. And I don't think this Court can in the first instance, if this Court finds it necessary to reach that. You would have to send it back, right? You would have to send it back under Thomas and Ventura Supreme Court cases. The Board would have to address that. But I would posit that it's not necessary to do that. I get your point. But as you know, we have to look at what the BIA did. We don't look at what the IJ did unless the BIA simply adopts the IJ's opinion out of whole cloth. But in this case, it seems like they did not analyze the social group issue. And they clearly didn't apply Barajas. They talked about one central reason, and they said so. So if they said that, that standard has been changed by Barajas, even though ultimately, based on what the IJ did, it may be futile because they're going to come right back and say that it is a reason and that's all that's necessary. We can't make that decision as a court of appeal, can we? Well, I would — I would — our position is basically that in cases, in certain cases, there's some unpublished cases from this Court. And they go both ways. But basically, in Board decisions that predate Barajas, in some of these unpublished decisions, the Court has found that the Barajas didn't really matter because it's just there's no reason other than indiscriminate crime. That's the government's position in this case, that there's no reason to remand for Barajas because it is just a fear of indiscriminate crime. If that were the only issue, you may or may not be right. But whether they didn't consider the cognizableness of the daughter's social group or focus on a reason as opposed to one central reason, we really have to send it back with respect to the daughter's withholding claim, don't we? Well, I respectfully disagree with that. I think that the nexus determination, the determination that this is indiscriminate crime is dispositive. I mean, it doesn't have — But the problem is that the BIA doesn't say what you say. The BIA doesn't say the only reason for your fear is indiscriminate crime. The BIA says it's not one central reason for your fear. And so does the IJ. The IJ uses the one central reason language, too. And I do understand that. And that was the standard at the time. Sure. I'm not criticizing anyone.  I'm just telling you what our problem is. And I understand your concerns. It's just the government's position in this case that remand is unnecessary because I think the record evidence is so clear that they only fear indiscriminate crime. I mean, there's no evidence that her persecutors were motivated in any part by anything other than money. Their testimony reflects that. The transcripts of the calls reflect that. Their statements reflect that. There's just nothing else besides a fear of indiscriminate crime. That requires us to go back to what the IJ had. And as both my colleague and I have indicated, we're stuck with what the BIA said. And the BIA doesn't talk about that. Well, I think that, I mean, the BIA does cite to those portions of the IJ's decision. So that was definitely something that the Court used. And what I'm suggesting is the IJ used the one central reason, too. Yes. And like I said, I understand that. But it's our position that even though they've used that language, it's clear from the record that it's just there's no reason other than indiscriminate crime, which this Court has found is an insufficient basis for asylum and withholding of remuneration. Can I ask you to switch topics for a second? Sure. Can you address your colleague's contention that even if the mother doesn't belong to a cognizable social group, even if the BIA was correct in saying her social groups were not cognizable, she nonetheless can get relief because if her daughter does? I'm not entirely sure about that. Neither am I, which is why I'm asking. Yeah. I just don't know if I can give you the exact answer. But it seems to me since the daughter's asylum application was independent of her mother, she wasn't a derivative, that it would be unnecessary. I mean, I think the mother's social groups are clearly not cognizable. They're defined only by the harm that they experience, the circularity. And the Board's precedent, that's impossible for it to be cognizable. So I would say no, but I'm not 100 percent positive. And that issue, as close as I can tell, wasn't briefed. It wasn't. Right. So I don't know whether it's waived or not waived, but that's why I'm asking. Any other questions by my colleague? All right. Thank you. Okay. Thank you. We'll hear a rebuttal here. My colleague's question took you a little over, so we'll give you an extra minute. So give him two minutes, rebuttal. Thank you, Your Honor. You're welcome. In terms of whether that last point was briefed, it was argued, although rather succinctly and not well, I would admit. But at opening brief at page 12 and in the administrative record at page 22, that argument was made. Was that case, the genital mutilation case, a derivative claim for the mother? I mean, the daughter was tied to the mother through a derivative claim? I'm not sure. That's my recollection. I don't pretend to be expert on that case, but I think that's right. And I'm not sure that the record is clear from the Ninth Circuit's decision how it was postured. It's hard to believe that any of our decisions could be anything other than absolutely clear. But what was clear was the reasoning is that the harm was to the daughter, and therefore the parents could qualify for asylum that way, even though technically a parent cannot be a derivative of a child's claim. But in this case, would you not admit that they proceeded separately? You know, the daughter's social group was entirely different than the mother's. Absolutely. Entirely different circumstances as far as the basis for their claims. Yes, although I would redirect the Court to the record where there's a phone call to the mother even, and the harm that's threatened to the mother is we're going to cut your daughter up in little pieces. So I would argue that they're part of the same harm that's being threatened. Are you saying does this cut both ways, counsel? So if the daughter loses, the mother loses, too, automatically? I think so. So help me out here. I'm looking at page 12 of your opening brief. You don't cite the Benjamin case, do you? I don't. I just make the point without citing the authority. Well, no. The point made there is that the daughter established past persecution, but is there no argument here that I see that the daughter's establishing of whatever rights there are entitles the mother. Am I right in saying there's nothing in the brief that makes that argument? There is one sentence on page 12 that makes that argument. Okay. I'll keep looking for it. Thank you. Okay. Other questions by my colleagues? I see what you're saying. Okay. Thanks to you both for your argument. The case just argued is submitted. Thank you very much.
judges: M. Smith, Hurwitz, Eaton